IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

CARLOS SOTO-PINEDA, RAPHAEL
LEE OCHOA, and BARDOMAIANO
RENTERIA SALAZAR,

    Defendants.

CRIMINAL CASE NO.
1:12-CR-327-TCB-LTW

---

UNITED STATES OF AMERICA,

v.

ALBEAR CAMERINO,

    Defendant.

CRIMINAL CASE NO.
1:12-CR-329-TCB-LTW

AO 72A
(Rev.8/82)

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:12-CR-330-TCB-LTW |
|---|---|
| v. | |
| JAVIER VILLAREAL and ELDER CAMACHO, | |
| Defendants. | |

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:12-CR-331-TCB-LTW |
|---|---|
| v. | |
| JOSE GUADALUPE LARA, MARKUS GALVAN, EFRAIN MEJIA-RUIZ, ANDRES GUTIERREZ, and ROLANDO GUTIERREZ-REYES, | |
| Defendants. | |

## MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

Pending before this Court are the following Motions to Suppress evidence:

(1)   Raphael Lee Ochoa's Motion to Suppress Intercepted Communications, and any Evidence Derived Therefrom (1:12-CR-327, Docket Entry 68);

(2)   Carlos Soto-Pineda's Motion to Suppress Evidence (1:12-CR-327, Docket Entry

2

70);

(3)     Bardomaiano Renteria Salazar's Motion to Suppress Evidence (1:12-CR-327, Docket Entry 71);

(4)     Albear Camerino's Motion to Suppress Evidence Derived from Intercepted/Wiretap Communications (1:12-CR-329, Docket Entry 55);

(5)     Javier Villareal's Preliminary Motion to Suppress all Conversations and Evidence Seized Pursuant to Court Ordered Electronic Interceptions and Supplement to Motion to Suppress All Conversations and Evidence Seized Pursuant to State-Court Ordered Electronic Interceptions (1:12-CR-330, Docket Entries 34, 48);

(6)     Elder Camacho's Motion to Suppress Evidence Derived From Wiretaps (1:12-CR-330, Docket Entry 50);

(7)     Jesus Guadalupe Lara's Motion to Suppress Intercepted Communications and Evidence Derived Therefrom Pursuant to Title III and Request for Oral Argument (1:12-CR-331, Docket Entries 108, 123);

(8)     Efrain Mejia-Ruiz's Motion to Suppress Wiretap Evidence (1:12-CR-331, Docket Entry 109);

(9)     Markus Galvin's Motion to Suppress Evidence Obtained Through Wiretaps and Fruits Thereof (1:12-CR-331, Docket Entry 111);

(10)    Andres Gutierrez's Motion to Suppress Wiretap Evidence (1:12-CR-331, Docket Entry 110); and

(11)    Rolando Gutierrez-Reyes' Motion to Adopt Motion to Suppress Intercepted

Communications and Evidence Derived Therefrom (1:12-CR-331, Docket Entry 112).

For the reasons outlined below, Defendants' Motions to Suppress should be **DENIED**.

Also before the Court are (1) Defendant Villareal's Motions for Leave to Adopt (1:12-CR-330, Docket Entries 58 and 61); and (2) Defendant Camacho's Motion to Adopt the Reply Briefs of Co-Defendant and Related Cases (1:12-CR-330, Docket Entry 63). The Defendants' Motions to Adopt are **GRANTED**. (1:12-CR-330, Docket Entries 58 and 61); 1:12-CR-330, Docket Entry 63).

Finally, to the extent that a Defendant would like to either withdraw or proceed with briefings, hearings or rulings on any remaining motions, you are hereby **ORDERED** to inform the Court of your choice within fourteen days of the entry date of this Report and Recommendation so that the Court can either rule on the remaining motions or certify your case ready for trial.[1]

## I. <u>BACKGROUND</u> [2]

On September 25, 2012, a federal grand jury indicted a total of twenty-five Defendants in six cases on controlled substances charges. During the course of the prosecution, the Government provided Defendants with discovery which included

---

[1] Some of the Defendants agreed to wait to until the state wiretap issue was addressed by the Court before proceeding with either briefings, hearings or rulings on other motions pending before the Court.

[2] The parties have agreed that the background facts have occurred as indicated in the Government's brief.

recordings and linesheet summaries of all calls intercepted through twenty-three wiretaps that were authorized by DeKalb County, Georgia Superior Court judges between October 31, 2011 and March 21, 2012, and intercepted and monitored in the Drug Enforcement Agency wire room in Fulton County.  Monitoring was performed by a lieutenant from the Cartersville Police Department, a police officer from the DeKalb County Sheriff's office, and a police officer from the Rockdale County Sheriff's Office. All three officers were assigned as task force officers to the Atlanta Drug Enforcement Agency Group 2 and were supervised by Special Agent Keith Cromer of the Drug Enforcement Agency.  Monitoring of the DeKalb wires ceased no later than April 9, 2012.

On January 13, 2013, the Georgia Supreme Court issued an opinion in Luangkhot v. State, 292 Ga. 423 (2013), concluding that a state wiretap was invalid for lack of jurisdiction if the order authorizing the wiretap was signed in one judicial circuit and the wiretaps were actually intercepted in a different judicial circuit.  Id. at 427.  In Luangkhot, wiretaps authorized by a superior court judge sitting in Gwinnett County, Georgia, but intercepted and monitored in a wire room located in Fulton County, Georgia were invalid for lack of jurisdiction.  Id. at 427 ("[W]e hold that the current law vests the authority to issue wiretap warrants only in those superior courts of the judicial circuits in with the tapped phones or listening post are located.  Applying this holding, we conclude that the Gwinnett County Superior Court lacked the authority to issue wiretap warrants for the interceptions at issue here, which, on the evidence presented,

5

took place exclusively in Fulton County").

Shortly thereafter, on February 13, 2013, Governor Nathan Deal signed House Bill 55 which directed that the application for a warrant should be made before a superior court judge having jurisdiction over the crime under investigation, that such a warrant would have state-wide application, and interception of the communication would be permitted in any location within the state.

On January 18, 2013, the Government emailed defense counsel and this Court to inform everyone of the Luangkhot decision and to raise the issue of whether the DeKalb wires would be valid in the federal prosecution of the Defendants and canceled two plea hearings that had been scheduled so that Defendants could challenge the validity of the DeKalb wires. This Court permitted all of the interested Defendants to submit motions to address the issue of whether the Luangkhot decision requires suppression of the DeKalb wires in these federal cases. Eleven Defendants filed Motions to Suppress that are now before the Court.

## II.   LEGAL ANALYSIS

Defendants argue the evidence obtained from the wiretaps must be suppressed because under the federal wiretap statute, orders authorizing wiretaps obtained by state law enforcement officers in state courts must comply with both federal and state law. Defendants also argue the execution of the DeKalb wiretaps did not comply with state law because under state law, the DeKalb County Superior Court judges were not empowered to issue orders for wiretaps which would be monitored by law enforcement

6

officers located at a Fulton County listening post. Defendants therefore contend that the evidence obtained from the DeKalb wiretaps must be suppressed because without exception, the federal wiretap statute requires suppression of illegally obtained wire communications. Additionally, Defendants point out that the wiretap evidence would also be excluded under state law. In response, the Government argues the wiretap evidence should not be suppressed under the federal wiretap act because territorial jurisdiction is not a core component of the federal wiretap statute and because the law enforcement officers relied in good faith in what they believed to be a valid wiretap order.[3]

A.   **State and Federal Law are Analyzed in Determining the Validity of the State Wiretap Order**

Law enforcement attempts to monitor telephone conversations must comport with both constitutional and statutory requirements. United States v. Domme, 753 F.2d 950, 952-53 (11th Cir. 1985). In order to ensure more extensive protection of privacy than provided by the Constitution, Congress enacted the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, which more closely controls the use of electronic surveillance. Domme, 753 F.2d at 952-53. In 18 U.S.C. § 2517(3), Congress authorized the admissibility of wiretap

---

[3] The Government also argued in its response brief that some Defendants do not have standing to challenge the admission of the wiretap evidence. (Gov't's Br. 5-8). However, the Government appeared to have conceded the issue of the Defendants' standing at this Court's hearing on June 11, 2013. Assuming without deciding the Defendants' standing to challenge the admission of the wiretap evidence, as discussed below, the wiretap evidence should not be suppressed.

7

evidence in a federal trial if it was obtained in conformance with the federal wiretap statute. The authorization provides that "[a]ny person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath . . . ." 18 U.S.C. § 2517(3); United States v. McNulty, 729 F.2d 1243, 1264 (10th Cir. 1983). Authorization for receipt of state authorized and conducted wiretaps is contained in 18 U.S.C. § 2516(2).

Specifically, Section 2616(2) provides:

(2) The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a *State court judge of competent jurisdiction* for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and *such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute* an order authorizing, or approving interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marijuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

18 U.S.C. § 2516(2) (emphasis added). The text provides that a State court judge of competent jurisdiction may grant the application and issue an order authorizing the interception if the application is conformity with both 18 U.S.C. § 2518 and more

stringent substantive requirements of the applicable state statute. 18 U.S.C. § 2516(2) (providing that "such judge may grant [the application] *in conformity with* Section 2518 of this chapter and with *the applicable State statute* an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made . . ."); United States v. Miller, 116 F.3d 641, 661 (2d Cir. 1997). In reliance on this text, the Eleventh Circuit has concluded in United States v. Bascaro, 742 F.2d 1335 (11th Cir. 1984) (abrogated on other grounds in United States v. Lewis, 429 F.3d 1219 (11th Cir. 2007)), that the "requirements of [both] state and federal law govern a federal district court's determination of the validity of wiretap warrants obtained by state law enforcement officers in state courts."[4]  Id. at 1347; see also United States v. Johnson, 281 F. App'x 909, 911-12 (11th Cir. 2008); United States v. Nelligan, 573 F.2d 251, 254 (5th Cir. 1978) (noting that while federal law governs the admissibility of wiretap evidence in federal criminal cases, "the federal statute *includes* the relevant state law in the context of state court authorizations").

---

[4] The Government suggests that this case is distinguishable from Bascaro, supra, and Nelligan, supra, because the law enforcement officers who obtained the wiretaps in this case were part of a federal task force. The Government reasons that because the law enforcement officers were part of a federal task force, there is a "federal aspect" to the case and therefore, federal law, not state law, should not apply. This interpretation, however, departs from the statutory language in the federal wiretap statute which requires that the application presented to a state court judge conform with the applicable state statute. 18 U.S.C. § 2516(2). Because the application for the wire was made in state superior court, it could only be granted if it was in conformity with both the federal and state wiretap statutes. 18 U.S.C. § 2516(2).

Thus, the federal wiretap statute allows a state court of competent jurisdiction to issue a wiretap authorization order. 18 U.S.C. § 2516(2). The federal wiretap statute defines a state court of competent jurisdiction as "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications." 18 U.S.C. § 2510(9)(b). Thus, the federal statute delegates to the state the determination of which of its courts are empowered to issue wiretap warrants. Adams v. Lankford, 788 F.2d 1493, 1499-1500 (11th Cir. 1986); Luangkhot v. State, 292 Ga. 423, 425-26 (2013). There is no question whether the DeKalb Superior Court judges were of competent jurisdiction to issue a wiretap order in general. The question is whether the DeKalb Superior Court judges could issue a wiretap order authorizing law enforcement officers to intercept wiretap communications from a listening post in Fulton County.

## B.   Under State Law Existing at the Time, the DeKalb Judges did not Have Authority to Permit Interception Outside of Their Districts

The Georgia Supreme Court, in Luangkhot v. State, 292 Ga. 423 (2013), determined that the territorial jurisdiction of a superior court judge is the judicial circuit in which he presides. Id at 425-27. Thus, under Georgia law at the time of the interceptions at issue in this case,[5] a superior court's authority to issue warrants was generally limited to places within the superior court's jurisdiction. Id. Based on this

---

[5] The Georgia wiretap statute was subsequently amended, effective February 13, 2013, and now provides that superior court judges may issue warrants for wiretaps that have state-wide application and that interception of communications are permitted at any location within Georgia. O.C.G.A. § 16-11-64(c).

reasoning, the Georgia Supreme Court concluded that superior court judges did not "possess the authority to issue wiretap warrants for interceptions conducted outside the boundaries of their respective judicial circuits." Luangkhot, 292 Ga. at 423. Because Luangkhot analyzes the state of the law at the time the wiretap warrants were issued in this case, the DeKalb County Superior Court judges were not empowered to issue wiretap warrants for wiretaps which would be intercepted and monitored by law enforcement officers located at a Fulton County listening post. Luangkhot v. State, 292 Ga. at 423-24.

The Government argues, however, that even if the law enforcement officers were not fully compliant with state wiretap jurisdictional provisions, the evidence obtained from the wiretaps should not be excluded under Title III because the state jurisdictional question does not implicate a core concern of Title III and because the law enforcement officers relied upon the warrants in good faith. Defendants respond that Title III requires suppression of wiretap evidence obtained in violation of state and federal law without question. Defendants further argue the state jurisdictional violation is far more serious that technical violations of the wiretap statute that have been found in other circuits not to implicate a central concern of the federal wiretap statute. Additionally, Defendants argue that neither the federal nor the Georgia wiretap statute provides for a good faith exception. Finally, Defendants contend that the good faith exception cannot apply because the DeKalb superior court judges who issued the wiretap orders did not have jurisdiction, the orders were a "nullity," and as a result, there was no order

11

upon which the officers could have relied.

As argued by Defendants, if Georgia law supplies the rule of decision for determining whether a wiretap order was improperly issued by a state court judge outside of his or her jurisdiction, and whether the evidence obtained based on the order should be suppressed, then the evidence should be suppressed. The Georgia Supreme Court in Luangkhot noted that under O.C.G.A. § 16-11-67 evidence obtained in violation of the Georgia wiretap statute is inadmissible and determined that the evidence obtained based on the faulty wiretap orders should have been suppressed. Luangkhot, 292 Ga. at 401. Furthermore, under Georgia law, no good faith exception applies to excuse law enforcement conduct in violation of the Georgia wiretap statute. Jordan v. State, 211 Ga. App. 86, 89-90 (1993).

**C.**     **Federal Law Applies in Determining Whether Evidence Obtained Based on State Wiretap Order Must be Suppressed**

Georgia law, however, does not supply the rule of decision in analyzing whether evidence obtained based on an state wiretap order which was applied outside the state judge's judicial circuit must be suppressed in federal court. In determining whether evidence obtained from a wiretap must be suppressed, federal law, not state law, applies. Although Section 2516(2) requires that the applications for wiretaps to state court judges must be in conformity with state law requirements, it does not require that federal courts apply state rules of decision about admissibility when a wiretap fails to comply with requirements of state law. See generally, 18 U.S.C. § 2516(2). Because the Court

12

is determining the admissibility of evidence in a federal criminal proceeding, federal law applies in making that determination. United States v. Charles, 213 F.3d 10, 19 (1st Cir. 2000) (concluding that the fact that evidence from wiretap authorized by state court judge was suppressed in state court did not require that it be suppressed in federal court because federal law determines whether evidence is admissible in federal court); United State v. Williams, 124 F.3d 411, 427-28 (3rd Cir. 1997) (declining to apply state law which required suppression of evidence as remedy for a violation of a state wiretap statute disclosure provision because federal district courts decide evidence questions in federal criminal cases on the basis of federal rather than state law); United States v. Glinton, 154 F.3d 1245, 1252-53 (11th Cir. 1998); United States v. Brazel, 102 F.3d 1120, 1154 (11th Cir. 1997); United States v. Malekzadeh, 855 F.2d 1492, 1496 (11th Cir. 1988) ("Admission, in federal court of evidence obtained by state officers is governed by federal law."); United States v. North, No. 3:09CR92TSL–FKB, 2011 WL 653864, at *5 (S.D. Miss. Feb. 14, 2011) (applying federal law to determination of whether evidence obtained from state wiretap orders should be suppressed and concluding in part that territorial jurisdiction violation did not require suppression of evidence because it did not implicate central concern of federal wiretap statute). Indeed, in United States v. Nelson, 837 F.2d 1519 (11th Cir. 1988), the Eleventh Circuit analyzed federal law, not state law, in determining whether evidence obtained in reliance on a wiretap order authorized by a Florida state circuit judge should be suppressed because the wiretapping devices could be located outside the Florida judge's

13

jurisdiction. Id. at 1527.  In analyzing the issue, the Eleventh Circuit considered federal law and reasoned that even assuming the evidence was obtained based on state wiretap order which was to be applied outside the judge's territorial jurisdiction, the evidence should not be suppressed because it did not implicate core concerns of the federal wiretap statute. Id. at 1527; see also United States v. North, No. 3:09-CR-92-TSL-FKB, 2011 WL 653864, at *5 (S.D. Miss. Feb. 14, 2011) (reaching same conclusion).

### D.    The Federal Wiretap Statute Does not Require Suppression

Turning now to the question of whether the wiretap evidence is required to be suppressed under federal law, Section 2515 of the federal wiretap statute limits the usage of wiretap evidence in court proceedings as follows:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.  Under 18 U.S.C. § 2518(10)(a), a defendant "may move to suppress the contents of any wire or oral communication intercepted pursuant to [the federal wiretap statute], or evidence derived therefrom, on the grounds that (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."  The United States Supreme Court in interpreting this language in the wiretap statute has held that although

14

Section 2518(10)(a) allows suppression when a communication is unlawfully intercepted, "not every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications unlawful." United States v. Donovan, 429 U.S. 413, 433-34 (1977); United States v. Chavez, 416 U.S. 562, 574-75 (1974); United States v. Giordano, 416 U.S. 505, 527 (1974). Suppression is required only for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." Donovan, 429 U.S. at 433-34, citing Giordano, 416 U.S. at 527. Where the requirement violated does not play a central, or even functional role in guarding against unwarranted use of wiretapping or electronic surveillance, suppression is not required. Donovan, 429 U.S. at 435-36; United States v. Van Horn, 789 F.2d 1492, 1500 (11th Cir. 1986). Under this reasoning, the Courts of Appeal have not suppressed wiretap evidence where the violation of the federal wiretap statute was a mere technicality. United States v. Lomeli, 676 F.3d 734, 739 (8th Cir. 2012) ("Suppression is not justified if the facial insufficiency of the wiretap order is no more than a technical defect."); United States v. Gray, 521 F.3d 514, 523-27 (6th Cir. 2008); United States v. Radcliff, 331 F.3d 1153, 1162-63 (10th Cir. 2003) (reasoning that suppression was not required for failure to name Department of Justice officials who authorized the wiretap applications because mere technical defect in wiretap application did not establish a substantive role to be played in the regulatory system); Van Horn,

15

789 F.2d at 1500 (holding that failure to completely comply with wiretap application requirements because materials were inadvertently omitted did not require suppression of wiretap evidence).

This Court cannot conclude that the jurisdictional requirement at issue in this case would play a central or functional role in guarding against unwarranted use of wiretapping or electronic surveillance.  The Eleventh Circuit's decision in Adams v. Lankford, 788 F.2d 1493 (11th Cir. 1986), seems to support the notion that the jurisdictional requirement would not play a central or functional role even though the case is not directly on point because it was analyzed in the context of whether a possible Title III violation was cognizable on habeas review.  There, the defendants contended that evidence obtained through wiretaps on phones outside Fulton County should have been suppressed because the District Attorney seeking authorization for the wiretaps and the judge authorizing the wiretaps were both from Fulton County.  Adams, 788 F.2d at 1495.  The defendants there also contended that the evidence should have been excluded pursuant to 18 U.S.C. § 2515 because the Fulton County District Attorney and the Fulton County Superior Court judge had no authority under Georgia law or Sections 2516(2) and 2518(3) of the federal wiretap statute to authorize wiretaps on telephones outside Fulton County.  Adams, 788 F.2d at 1495.  In that case, the panel concluded that assuming that a violation of Title III occurred if the wrong superior court judge and the wrong district attorney authorized the wiretaps at issue there, the issue was only cognizable on habeas review if the violations implicated the core concerns of Title III

16

and were not merely formal or technical errors. Adams, 788 F.2d at 1496-97. The court concluded that the core concerns of Title III, (1) protecting the privacy of wire and oral communications, and (2) delineating a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, were not implicated. Adams, 788 F.2d at 198. The panel reasoned that the possible jurisdictional violation in that case did not implicate the core concerns of Title III because there was no connection between the federal wiretap statute's concern for individual privacy and government's alleged violation of jurisdictional provisions. Adams, 788 F.2d at 1498. The Eleventh Circuit reasoned that the legislative history is silent with respect to the connection, if any, between the geographical limitations on state officials' capacity to authorize wiretaps on one hand and the statute's concern for individual privacy on the other. Id.

Although the Eleventh Circuit's reasoning was based on the "core concern for individual privacy" behind the federal wiretap statute which is relevant for purposes of habeas review, the Eleventh Circuit appears to have applied the same reasoning when determining whether wiretap evidence should be suppressed. In a second case, United States v. Nelson, 837 F.2d 1519, 1527 (11th Cir. 1988), which was decided outside the habeas context, the Eleventh Circuit affirmed a district court's decision not to suppress wiretap evidence when the Florida judge issuing the wiretap order did so for telephone facilities within his jurisdiction but law enforcement officers transmitted the information from the wiretaps to a location possibly outside the judge's jurisdiction. Id. at 1527.

17

The Eleventh Circuit reasoned in that case that the evidence from the wiretap should not be suppressed even if the wiretap order "lacked territorial jurisdiction" because "territorial jurisdictional limitations did not implicate Congress's core concerns in passing Title III." Nelson, 837 F.2d at 1527. Based on these authorities, this Court cannot conclude that a central or functional role was implicated by the state jurisdictional violation at issue in this case. See Nelson, 837 F.2d at 1527; United States v. North, No. 3:09CR92TSL–FKB, 2011 WL 653864, at *6 (S.D. Miss. Feb. 14, 2011) (concluding the same on similar facts). Accordingly, the evidence derived from the wiretap order should not be suppressed .

### E.  The Good Faith Exception Applies

Moreover, suppression is unwarranted because the facts of this case present grounds for a straightforward application of the good faith exception to Title III's exclusionary rule. Although the statutory text does not specifically provide for a good faith exception, the Eleventh Circuit in United States v. Malekzadeh, 855 F.2d 1492 (11th Cir. 1988), and other Courts of Appeal have concluded that it applies in the context of violations of the federal wiretap statute. Malekzadeh, 855 F.2d at 1496-97; see also United States v. Brewer, 204 F. App'x. 205, 208 (4th Cir. 2006); United States v. Moore, 41 F.3d 370, 376 (8th Cir. 1994) (applying good faith exception to facially invalid wiretap order judge inadvertently did not sign where law enforcement officer believed that he watched the judge sign the order because officer acted in good faith in presuming the validity of the wiretap and officer complied with core statutory

18

requirements of federal wiretap law); United States v. Aiello, 771 F.2d 621, 627-28 (2d Cir. 1985) (abrogated on other grounds by Rutledge v. United States, 517 U.S. 292 (1996)); but see United States v. Rice, 478 F.3d 704 (6th Cir. 2007) (concluding that good faith exception does not apply to violations of federal wiretap statute because the statutory language does not provide any exceptions to the exclusionary rule in Section 2518(10)(a) and the legislative history does not support incorporation of the good faith exception). In Malekzadeh, the defendant argued that the agent who sought judicial authorization for a wiretap relied upon evidence obtained during a prior search of the defendant's home, which defendant maintained was an unconstitutional search. Malekzadeh, 855 F.2d at 1496-97. The trial court found and the defendant did not dispute that the agent who applied for the wiretap relied on information obtained from the prior search that she gleaned from public records and that the evidence from the prior search had not been suppressed. Id. at 1497. The trial court did not reach the question of the validity of the 1980 search warrant and instead concluded that the agent acted in good faith reliance on the available information. Id. at 1497. The Eleventh Circuit affirmed the decision of the trial court judge and determined that the agent's conduct in relying on public information as a basis for the wiretap application was objectively reasonable and that suppression of the information obtained from the wiretap would not provide any of the deterrence served by the exclusionary rule. Id.

Defendants argue the Eleventh Circuit did not hold in Malekzadeh that the good faith exception applies in the context of wiretaps and instead only applied the good faith

19

exception to the prior search warrant for the allegedly unconstitutional search of the residence of the defendant in that case.  In addition, Defendants maintain that any application of the good faith exception to avoid the exclusion of the wiretap evidence in Malekzadeh would be dicta.  This Court disagrees.  The Eleventh Circuit was not applying the good faith exception to excuse alleged unlawful police conduct in the prior search of the defendant's residence because neither the Eleventh Circuit nor the trial court reached the question of whether the prior search was unconstitutional or whether evidence from that search was fruit of the poisonous tree.  Malekzadeh, 855 F.2d at 1497 (explaining that it would be reviewing trial court decision on clearly erroneous standard and noting that the trial court did not reach the question of the validity of the 1980 search warrant).  There was no discussion of whether the law enforcement officers who searched the home did so in good faith reliance of the search warrant for the home. Id.  Instead, the Eleventh Circuit elected to affirm the trial court's application of the good faith exception to the agent's conduct in obtaining the wiretap.  The panel specifically stated that "[e]xcluding the fruits of the *wiretap* would in no way work to deter the conduct of the officer who relied on public information as a basis for the wiretap application." Malekzadeh, 855 F.2d at 1497; see also United States v. Gonzalez Perez, 283 F. App'x 716, 722 (11th Cir. 2008) (concluding that suppression of wiretap evidence was not justified for lack of probable cause to support wiretap warrants even though law enforcement officers mistakenly indicated in affidavit supporting wiretap that defendant had been previously indicted in Pennsylvania, but the charges were later

20

dismissed after authorities were unable to locate defendant, because officers relied in good faith on information provided by Pennsylvania authorities); United States v. Thompson, 936 F.2d 1249, 1252 n.2 (11th Cir. 1991) (noting that the Eleventh Circuit in Malekzadeh applied good faith exception to Title III wiretap). Based on the holding in Malekzadeh, the district courts on the Northern District of Georgia have uniformly held that the Eleventh Circuit has recognized a good faith exception to the exclusionary rule applies to wiretap applications and orders.   United States v. Dooley, No. 1:11–CR–255–3–TWT, 2013 WL 2548969, at *23 (N.D. Ga. June 10, 2013) (Judge Thrash); United States v. Edwards, No. 1:10-CR-521-07-TCB/AJB, 2012 WL 602924 (N.D. Ga. Feb. 24, 2012) (adopting Magistrate Judge Baverman's Report and Recommendation in United States v. Edwards, No. 1:10-CR-521-07-TCB/AJB, 2012 WL 602926, at *7 (N.D. Ga. Feb. 02, 2012) (NO. 1:10-CR-521-07-TCB) which concluded that the good faith exception applies to wiretaps) (Judge Batten); United States v. Acosta, 807 F. Supp. 2d 1154, 1248 (N.D. Ga. 2011) (Chief Judge Carnes); United States v. Flores, No. 1:05-CR-558-WSD-JFK, 2007 WL 2904109, at *36 (N.D. Ga. Sept. 27, 2007) (Judge Duffey).  Likewise, this Court concludes that the Eleventh Circuit's opinion in Malekzadeh is binding and that in the Eleventh Circuit, the good faith exceptions applies to wiretap applications and orders.

Pursuant to the good faith exception, evidence discovered by an officer acting on a wiretap order should not be excluded if the officer acted in the objectively reasonable belief that his conduct did not violate the law.  Moore, 41 F.3d at 376-77; Malekzadeh,

21

855 F.2d at 1497 (citing United States v. Leon, 468 U.S. 897, 926 (1984)).  In this case, application of the good faith exception is warranted because the officers acting on the wiretap orders could not have known that the DeKalb judges authorizing the wiretaps did not have jurisdiction to permit the officers to intercept telephones from a wire room in Fulton County or that intercepting the wiretaps from the listening room in Fulton County would violate state law.  Indeed, language within the Georgia wiretap statute which impacted the question of jurisdiction had been amended in 2000 and in 2002. Luangkhot v. State, 313 Ga. App. 599, 602-03 (2012) (reversed by Luangkhot v. State, 292 Ga. 423 (2013)).  Competent jurists from the both the Georgia Court of Appeals and the Georgia Supreme Court have since disagreed based on the amended language as to the reach of the state superior court judge's jurisdiction to issue wiretaps which would be intercepted outside their counties.  Compare Luangkhot, 313 Ga. App. 599 (2012) with Luangkhot v. State, 292 Ga. 423 (2013).  The question only became settled by the Georgia Supreme Court's decision in Luangkhot v. State, 292 Ga. 423 (2013), which was issued well after the officers relied on the wiretap orders issued here.  Under these circumstances, this Court concludes that application of the good faith exception is warranted.  See United States v. Miller, 116 F.3d 641, 661 (2d Cir. 1997) (concluding that good faith exception applied because there had been no prior authoritative state court interpretation at the time state officers completed their usage of pen-registers); United States v. Butz, 982 F.2d 1378, 1382-83 (9th Cir. 1993) (concluding that it was not in the interest of justice to suppress evidence where state officers relied on then-

22

existing interpretation of state law in good faith); <u>United States v. Aiello</u>, 771 F.2d 621, 627 (2d Cir. 1985) (holding that exclusion under the wiretap statute is inappropriate even though new state court interpretations of state laws concerning evidence-gathering became more stringent, where state officer relies in good faith on pre-existing less stringent state court interpretations of state law); <u>see also</u> <u>United States v. Hickman</u>, 83 F.3d 416 (4th Cir. 1996) (applying good faith exception where officers relied on facially valid arrest warrant even though the judge issuing the warrant did not have proper jurisdiction); <u>United States v. Steed</u>, 548 F.3d 961, 969 (11th Cir. 2008) (observing that the good faith exception to the exclusionary rule applies when an officer's reliance on the constitutionality of a statute is objectively reasonable, but the statute is subsequently declared unconstitutional because unless the statute is clearly unconstitutional, the officer could not be expected to question the judgment of the legislature that passed the law) (citing <u>Illinois v. Krull</u>, 480 U.S. 340 (1987)).  Accordingly, Defendants' Motions to Suppress should be **DENIED**.

## CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that following Defendants' Motions to Suppress be **DENIED**:

(1)     Raphael Lee Ochoa's Motion to Suppress Intercepted Communications, and any Evidence Derived Therefrom (1:12-CR-327, Docket Entry 68);

(2)     Carlos Soto-Pineda's Motion to Suppress Evidence (1:12-CR-327, Docket Entry

23

70);

(3)   Bardomaiano Renteria Salazar's Motion to Suppress Evidence (1:12-CR-327, Docket Entry 71);

(4)   Albear Camerino's Motion to Suppress Evidence Derived from Intercepted/Wiretap Communications (1:12-CR-329, Docket Entry 55);

(5)   Javier Villareal's Preliminary Motion to Suppress all Conversations and Evidence Seized Pursuant to Court Ordered Electronic Interceptions and Supplement to Motion to Suppress All Conversations and Evidence Seized Pursuant to State-Court Ordered Electronic Interceptions (1:12-CR-330, Docket Entries 34, 48);

(6)   Elder Camacho's Motion to Suppress Evidence Derived From Wiretaps (1:12-CR-330, Docket Entry 50);

(7)   Jesus Guadalupe Lara's Motion to Suppress Intercepted Communications and Evidence Derived Therefrom Pursuant to Title III and Request for Oral Argument (1:12-CR-331, Docket Entries 108, 123);

(8)   Efrain Mejia-Ruiz's Motion to Suppress Wiretap Evidence (1:12-CR-331, Docket Entry 109);

(9)   Markus Galvin's Motion to Suppress Evidence Obtained Through Wiretaps and Fruits Thereof (1:12-CR-331, Docket Entry 111);

(10)  Andres Gutierrez's Motion to Suppress Wiretap Evidence (1:12-CR-331, Docket Entry 110); and

24

(11)   Rolando Gutierrez-Reyes' Motion to Adopt Motion to Suppress Intercepted Communications and Evidence Derived Therefrom (1:12-CR-331, Docket Entry 112).

Additionally, (1) Defendant Villareal's Motions for Leave to Adopt (1:12-CR-330, Docket Entries 58 and 61); and (2) Defendant Camacho's Motion to Adopt the Reply Briefs of Co-Defendant and Related Cases (1:12-CR-330, Docket Entry 63) are **GRANTED**.

Finally, to the extent that a Defendant would like to either withdraw or proceed with briefings, hearings or rulings on any remaining  motions, you are hereby **ORDERED** to inform the Court of your choice within fourteen days of the entry date of this Report and Recommendation so that the Court can either rule on the remaining motions or certify your case ready for trial.

**SO ORDERED, REPORTED AND RECOMMENDED** this  11  day of July, 2013.

/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

25