IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| ANTONO GOVEA-VAZQUEZ, ) | CRIMINAL ACTION FILE |
| JOSE GUADALUPE LARA, ) | |
| MARKUS GALVAN, EFRAIN ) | NUMBER 1:12-cr-331-TCB |
| MEIJA-RUIZ, ANDRES ) | |
| GUTIERREZ, and ROLANDO ) | |
| GUTIERREZ-REYES, ) | |
| ) | |
| Defendants. ) | |

O R D E R

This matter is before the Court on Defendants Jose Guadalupe Lara and Efrain Mejia-Ruiz's[1] objections [130] to Magistrate Judge Walker's Report and Recommendation (the "R&R") [128], which recommends that Defendants' motions to suppress the wiretap evidence [108-112] be denied.

---

[1] Mejia-Ruiz's motion to adopt Lara's objections [132] is GRANTED.

## I. Defendants Who Have Pled Guilty

Following the filing of the R&R, Defendants Markus Galvan, Andres Gutierrez and Rolando Gutierrez-Reyes entered guilty pleas and are awaiting sentencing. Accordingly, the Court DENIES AS MOOT the pending pretrial motions of and DEEMS MOOT the R&R with respect to these Defendants. *See United States v. Damiani*, No. 1:10-cr-519-AT, 2012 WL 983726, at *1 (N.D. Ga. Mar. 20, 2012).

## II. Standard of Law for Objections

Turning to the objections, a district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982)).[2] Where no objection to the R&R is made, it need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[3] Where objections are made, a

---

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing continuing validity of *Nettles*).

[3] *Macort* addressed only the standard of review applied to a magistrate judge's factual findings; however, the Supreme Court has held that there is no reason for the

district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  The district judge must "give fresh consideration to those issues to which specific objection has been made by a party."  *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990).

"Parties filing objections must specifically identify those findings objected to.  Frivolous, conclusive or general objections need not be considered by the district court."  *Nettles*, 677 F.2d at 410 n.8.  "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act."  *Id.* at 410.

The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge.  *Williams v. McNeil*, 557

---

district court to apply a different standard of review to a magistrate judge's legal conclusions.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Thus, district courts in this circuit have routinely applied a clear-error standard to both.  *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (collecting cases).  By contrast, the standard of review on appeal distinguishes between the factual findings and legal conclusions.  *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when magistrate judge's findings of fact are adopted by district court without objection, they are reviewed on appeal under plain-error standard, but questions of law remain subject to de novo review).

F.3d 1287, 1292 (11th Cir. 2009).  Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court."  *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations.  28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732.  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1)(C).

III.   Evaluating Defendants' Objections

The Court has conducted a careful review of the R&R and Lara and Mejia-Ruiz's objections thereto.  Having done so, the Court finds that Magistrate Judge Walker's factual and legal conclusions were correct and that Defendants' objections have no merit.

A.   Law Governing Admissibility

The R&R applied state and federal law to determine whether the challenged wiretap orders were valid, and then applied federal law to determine whether the wiretap evidence, intercepted pursuant to orders

4

that violated state law, were admissible. In their objections, Defendants contend that the R&R improperly applied federal law to determine whether the wiretap evidence was admissible. Relying on *United States v. Bascaro*, 742 F.2d 1335 (11th Cir. 1984), *abrogated on other grounds by United States v. Lewis*, 429 F.3d 1219 (11th Cir. 2007), and *United States v. Glinton*, 154 F.3d 1245 (11th Cir. 1998), they assert that state law should govern validity and admissibility, and that under Georgia law the wiretap evidence should be suppressed, *see, e.g., Luangkhot v. State*, 736 S.E.2d 397 (Ga. 2013).

To evaluate Defendants' objections, the Court looks to the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 – 2520, and cases interpreting it. The present dispute primarily involves three sections of Title III. Section 2516(2) governs the validity of a state-issued wiretap order; § 2515 addresses when wiretap evidence must be suppressed; and § 2518(10)(a) details how and when a defendant may move to suppress wiretap evidence.

1.   Validity

Turning to validity, § 2516(2) provides that a state-court judge of competent jurisdiction may grant a wiretap application and issue an order authorizing interception if the application conforms with "section 2518 of this chapter and with the applicable State statute." Interpreting this provision, the Eleventh Circuit held in *Bascaro* that the "requirements of state and federal law govern a federal district court's determination of the *validity* of wiretap warrants obtained by state law enforcement officers in state courts." (Emphasis added); *see also Glinton*, 154 F.3d at 1252-53 ("federal courts must defer to state law on the question of the validity of wiretap orders obtained *by state law enforcement officers* in state courts") (internal quotations omitted).   Thus, to determine whether a wiretap order is valid, courts in the Eleventh Circuit must look at state and federal law.

Both the R&R and Defendants agree that the wiretap orders at issue in this case are invalid under Georgia law because the state-court judges issued wiretap orders outside of their jurisdiction.  However, the validity of the wiretaps is just the first inquiry, and contrary to Defendants' assertion, *Bascaro* and *Glinton* do not address the second inquiry pivotal to this case: whether the invalid wiretaps and evidence obtained thereunder are

6

admissible in a federal criminal case. In *Bascaro* and *Glinton*, the Eleventh Circuit determined that the wiretaps did not violate state law; consequently, it did not reach the issue of whether state or federal law or both governed the admissibility of a wiretap issued in violation of state law.

Moreover, in *Glinton* the Eleventh Circuit qualified its conclusion that state law controlled even as to determining validity. The court found that the issue of whether state or federal law governed was ambiguous because a state-court judge issued the wiretap order for a task force funded by a federal agency. The court did not conclusively resolve the issue; rather, it "assume[d] *Bascaro* applies and Florida state law governs the admissibility of this evidence." 154 F.3d at 1253. As Defendants point out, *Glinton* does quote in a footnote the Florida statute that requires suppression of wiretaps in violation of state law; however, as stated above, the court did not have to decide if the statute applied since it determined that the wiretap warrants were valid under state law.

Thus, in light of the limited reach of *Bascaro* and *Glinton*, the Court finds that R&R properly determined that these cases require application of state law to determine the validity of the wiretap orders but do not require application of state law to determine whether the wiretap evidence is

admissible. Therefore, the Court turns to §§ 2515 and 2518(a)(10) to evaluate admissibility.

### 2.    Admissibility

Under § 2515, "if the disclosure of [intercepted communications] would be in violation of this chapter," the communications must be suppressed upon a motion properly made under § 2518(10)(a). *See United States v. Giordano*, 416 U.S. 505, 508 (1974). Section 2518(10)(a) provides three bases for seeking suppression, and subsection (i) allows a defendant to seek suppression of wiretap evidence on the grounds that the evidence was "unlawfully intercepted." Here, Defendants contend that the communications were unlawfully intercepted because they were intercepted pursuant to an invalid state wiretap order.

Both §§ 2515 and 2518 are silent as to the law that governs evaluation of a Title III motion to suppress. Section 2516(2) is also silent as to the law governing admissibility; it requires only that the wiretap order be obtained in conformity with state and federal law. As explained in the R&R, in a federal criminal case, federal law typically governs the admissibility of evidence. *See United States v. Mathis*, 96 F.3d 1577, 1583 (11th Cir. 1996)

8

("federal law determines the admissibility in federal criminal cases of communications intercepted by a state or local officer").

Under the facts of this case, Defendants have not shown, and the Court does not find, that a different rule is required when the evidence comes from a state-court wiretap order issued in violation of the state-court judge's jurisdiction. *See United States v. Amanuel*, 615 F.3d 117, 122 (2d Cir. 2010) (holding that in federal criminal proceeding, federal law governs use of a state-issued eavesdropping warrant even if warrant violated state law and had been suppressed in state court) (citing *Miller*, 116 F.3d at 161); *United States v. Nelson*, 837 F.2d 1519 (11th Cir. 1988) (applying federal law to determine admissibility of wiretap issued in violation of state-court judge's territorial jurisdiction); *United States v. Malekzadeh*, 855 F.2d 1492, 1496 (11th Cir. 1988) (distinguishing between right to privacy and evidentiary dimensions of wiretap regulations and applying federal law to the latter).

Defendants argue that "[n]o case cited in the Magistrate R&R or by the government in its briefing actually supports the novel idea that when state wiretap law is violated, state admissibility laws do not apply." While the cases cited in the R&R do not explicitly hold that state admissibility

laws do not apply, the cases do provide ample support for the R&R's determination that federal law governs admissibility.  *See, e.g., Nelson*, 837 F.2d at 1527 (circuit court determined admissibility of state-court warrant based on federal law).  Thus, the R&R properly applied, and this Court also looks to, federal law to determine the admissibility of the wiretap evidence at issue.[4]

As stated in the R&R, "unlawfully intercepted" as used in § 2518(10)(a)(i) does not mean that any wiretap order issued in violation of a Title III requirement automatically renders the intercepted communications unlawful.  *See United States v. Donovan*, 429 U.S. 413, 433-34 (1977) (citing *United States v. Chavez*, 416 U.S. 562 (1977), and *United States v. Giordano*, 416 U.S. 505 (1977)).  "[S]uppression is required

---

[4] The Court finds further support for this conclusion based on the development of case law since *Bascaro*.  In *Bascaro,* the Eleventh Circuit found support for its holding, in part, from the Second Circuit's opinion in *United States v. Marion*, 535 F.2d 697 (2d Cir. 1976), which stated in dicta that if state procedures for wiretaps were more exacting than the federal statute, whether the interceptions and authorization orders were valid would depend on compliance with state law as well as federal law.  The circuit court also relied on a Tenth Circuit case, *United States v. McNulty*, 729 F.2d 1243 (10th Cir. 1984) (en banc opinion), which looked to the Second Circuit's *Marion* opinion as well for its holding that state law determined the validity of state-court wiretap orders.
    However, since *Bascaro* was issued the Second Circuit has clarified that the *Marion* language had "never been applied to exclude evidence" even if the evidence would not have been admissible in state court.  *United States v. Miller*, 116 F.3d 641, 660-61 (2d Cir. 1997).  This undermines Defendants' reliance on these opinions for the proposition that state law determines the validity *and admissibility* of state-issued wiretaps.

only for a 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'" *Id.* (quoting *Giordano*, 416 U.S. at 527). The Eleventh Circuit held in *Nelson* that communications intercepted in violation of the state-court judge's territorial jurisdiction did not implicate a core concern of Title III, and consequently they did not have to be suppressed.

In *Nelson*, 837 F.2d at 1526-27, which was issued after *Bascaro*,[5] the court reviewed the district court's denial of a motion to suppress wiretap evidence. During the case investigation, state and federal authorities obtained a wiretap order from a state-court judge, and the intercepted communications were introduced in a federal criminal case. The defendant argued that the wiretap evidence should be suppressed because the wiretapping signals were intercepted in a county outside the issuing court's territorial jurisdiction, much like the present case. The district court disagreed and denied the motion. On appeal, the Eleventh Circuit held that

---

[5] Throughout their objections, Defendants' main argument against the cases upon which the R&R bases its findings, including *Nelson*, is that the cases were issued before *Bascaro* and thus are no longer good law. This is incorrect; *Bascaro* was issued in 1984, well before most of the cases cited in the R&R, including *Nelson*.

11

"territorial limitations do not implicate a core concern of the federal wiretap statutes," and it affirmed the district court's denial of the defendant's motion to suppress.  *Id.* at 1527.

*Nelson* is analogous to the present situation, where the wiretap orders were issued outside the state-court judge's territorial jurisdiction, i.e., issued in one county while interception occurred in a different county; thus, the violation in this case does not implicate a core concern of Title III. Defendants disagree, arguing that the "point is not what the federal concerns are, but rather whether the state's more rigorous requirements are met."

Whether the wiretap order is valid under state law and if not the nature of the violation are important concerns; however, compliance with state law is just the first inquiry.  If the wiretap order does violate state law, the second inquiry is admissibility, which takes into consideration the nature of the state-law violation but in the context of determining whether that violation implicates the core concerns of Title III, i.e., "the federal concerns."

Defendants have offered neither argument nor authority that convinces the Court that the R&R erroneously concluded that a state-court

12

judge's territorial jurisdiction does not implicate a Title III core concern sufficient to render the intercepted communications unlawful. Defendants do question the R&R's reliance on *Nelson* and *Adams v. Lankford*, 788 F.2d 1493 (11th Cir. 1986); however, their arguments have not persuaded the Court that the R&R erred by relying on these cases. Even if *Nelson* were wrongly decided and *Adams* was not binding authority, as Defendants argue, Defendants have not provided any other cases to support their contention that territorial jurisdiction is a Title III core concern. While Defendants' arguments on this point are impassioned, they are unavailing.

Consequently, the Court holds that the communications collected pursuant to the wiretap orders in this case were not "unlawfully intercepted," and that the R&R correctly recommended that the motion to suppress be denied.

### B.   Good-Faith Exception

In the alternative to the above basis for denying Defendants' motions, the R&R also found that suppression was unwarranted because this case presents grounds for a "straightforward application of the good faith exception to Title III's exclusionary rule," which the Eleventh Circuit

recognized in *Malekzadeh*, 855 F.2d at 1496-97.  The R&R then provides a string cite of cases in this Court that have relied on *Malekzadeh* and held that the Eleventh Circuit recognizes a good-faith exception to the exclusionary rules of Title III.

The good-faith exception "asks whether the offending officers acted in the objectively reasonable belief that their conduct did not violate the fourth amendment."  *Id.* at 1497.  Applying the exception, the R&R found that the officers acting on the wiretap orders could not have known that the issuing judge did not have jurisdiction to issue a wiretap order that permitted the officers to intercept communications in a county different from the issuing judge.  Thus, the R&R recommended that the wiretap evidence not be suppressed pursuant to this exception and that the motions denied on this basis as well.

### 1. Application of Exception Generally

Defendants contend that the good-faith exception does not apply to Title III wiretaps.  They argue that *Malekzadeh* does not recognize a good-faith exception for Title III wiretaps, so it does not apply here.  However, Defendants acknowledge that "*Malekzadeh* is often cited for the holding

that the . . . good faith exception applies to Title III," and they have not convinced this Court that it should go against the accepted interpretation of *Malekzadeh*.

In *Malekzadeh*, the defendant sought to suppress a wiretap, arguing that the 1986 wiretap application was based on information from a 1980 search of his home that was "constitutionally infirm." While not clear, it appears that the wiretap order was issued by a state-court judge and that suppression was sought under Title III. The district court denied the defendant's motion to suppress, finding that the wiretap application was based on public records that had not been suppressed and on what appeared to be a validly issued search warrant.

The Eleventh Circuit affirmed, finding that the wiretap application was "devoid of deliberately false or recklessly false information," and thus the officer had an objectively reasonable belief that the wiretap application did not violate the Fourth Amendment. *Id.* at 1497. The circuit court appears to assume that the 1980 search was invalid but nonetheless found that the officer reasonably relied upon public information arising from this search. Thus, the court applied the good-faith exception, holding that "[s]uppression of the 1986 wiretaps for the alleged illegality in the 1980

15

search of [the defendant's] home would afford none of the deterrence served by the exclusionary rule." *Id.* at 1497.

Contrary to Defendants' assertion, the Eleventh Circuit did not find in *Malekzadeh* that the earlier search of the home was illegal or that the good-faith exception applied to the search of the home but not the wiretaps. Indeed, review of the R&R shows that the arguments against the application of *Malekzadeh* that Defendants raise in their objections were thoroughly and properly rejected in the R&R.  A different resolution of their arguments with respect to *Malekzadeh* is not required now.

Defendants' next arguments against application of the good-faith exception are that the language of and legislative history behind Title III do not support application of the exception.  The Court is not persuaded by Defendants' arguments, and Defendants have not provided any other binding or persuasive authority to support their position.

Finally, the Court finds Defendants' remaining arguments against application of the exception to Title III wiretaps meritless.

### 2. Application of the Exception to This Case

Assuming that the Court agrees with the R&R's finding that the exception does apply to Title III wiretaps, which it does, Defendants argue that the exception does not apply to this case because the officers intercepting the communications in Fulton County could not have objectively believed that intercepting such communications pursuant to an order issued by a state-court judge sitting in DeKalb County did not violate the Fourth Amendment. Defendants contend that the officers' behavior was objectively unreasonable because (1) it was a "basic fact of law in Georgia" at the time these wiretaps were issued that superior court judges had jurisdiction only in their respective circuits; (2) *United States v. Miller*, 24 F.3d 1357 (11th Cir. 1994), held that the good-faith exception does not apply when a judge lacks jurisdiction; and (3) *Luangkhot* is not new law.

With respect to Defendants' first and third arguments, Georgia law on this issue was not well-settled. So, while *Luangkhot* did not articulate new law, it did settle the question of the scope of state-court judges' jurisdiction. As the R&R noted, prior to *Luangkhot* "competent jurists from both the Georgia Court of Appeals and the Georgia Supreme Court" had disagreed on a state-court judge's jurisdiction based on the Georgia wiretap statute,

17

which had been amended in 2000 and 2002.  In fact, *Luangkhot* reversed a court of appeals decision that had reached the opposite conclusion, which led the R&R to conclude that the "question only became settled by the Georgia Supreme Court's decision in [*Luangkhot*]."

Nevertheless, Defendants contend that it is "mind-boggling" that the R&R would not expect a "Georgia law officer" to know the "basic rules regarding jurisdiction."  However, Defendants have not provided any cases that hold that officers should know and understand the scope of state-court judges' jurisdiction and the impact thereof when intercepting wiretap communications.  Nor have Defendants addressed the fact that "competent jurists" disagreed on this same topic after the wiretap-suppression statute was amended in 2000 and 2002.  Thus, the Court agrees with the R&R's finding that it would not have been obvious to the officers in Fulton County that they were intercepting communications outside the jurisdiction of the issuing judge who sat in DeKalb County.

With respect to Defendants' second argument, *Miller* does not hold that the good-faith exception does not apply when a state-court judge lacks jurisdiction.  Indeed, *Miller* does not address the good-faith exception, which even Defendants acknowledge.  The circuit court found it

18

"unnecessary to reach the merits of either the Government's good faith exception argument or the district court's foreclosure of this argument on jurisdictional grounds." 24 F.3d at 1360. Somehow this language leads Defendants to conclude, "Following the Court's application of the good faith exception in *Miller* it is clear that the agents could not have reasonably relied on the warrant." But the Eleventh Circuit court plainly did not apply the exception. Thus, *Miller* does not foreclose application of the good-faith exception to this case.

Accordingly, the Court finds that the R&R properly determined that an alternative basis for denying Defendants' motions to suppress was because the good-faith exception applied.

IV.   Conclusion

Having found that the R&R's factual findings and legal conclusions are correct, the Court ADOPTS AS ITS ORDER the R&R [128] and DENIES Lara's and Mejia-Ruiz's motions [108, 109]. The Government's motion for an extension of time to file a reply brief [116] is GRANTED nunc pro tunc, and Lara's motion for oral argument [123] is DENIED AS MOOT.

Further, the R&R directed Defendants to inform Magistrate Judge Walker within fourteen days whether there were any remaining motions that she needed to resolve. Review of the docket shows that all pending motions are resolved by this Order. Accordingly, the Court hereby CERTIFIES this case ready for trial.

IT IS SO ORDERED this 12th day of August, 2013.

_____
Timothy C. Batten, Sr.
United States District Judge